IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


The Estate of Arthur R. Sumrall,
by and through Carolyn A. Sumrall,
Individually and as Personal Representative
on Behalf of the Estate of Arthur R. Sumrall                                    PLAINTIFF

VS.                                            CIVIL ACTION NO.  2:06CV166KS-MTP

Illinois Central Railroad Company,
Canadian National Railway Company,
Sylvester Brown, Unidentified Entities 1
through 10, John Does 1 through 10                                              DEFENDANTS


**<u>MEMORANDUM OPINION AND ORDER</u>**

This cause is before the court on a motion to dismiss filed by defendant Canadian

National Railway Company.  From its review of all matters made a part of the record of this case

as well as applicable law, and being thus fully advised in the premises, the court FINDS that the

motion is not well taken and should be DENIED.  The court specifically finds as follows:

<u>FACTUAL BACKGROUND</u>

This lawsuit arises out of a motor vehicle-train collision that occurred on April 25, 2004

at a highway gradecrossing in Beaumont, Perry County, Mississippi, resulting in the death of

Arthur R. Sumrall, the driver of the vehicle.  The widow and personal representative of the Estate

of Arthur R. Sumrall, Carolyn A. Sumrall, filed this suit on April 5, 2006 in the Circuit Court of

Perry County, Mississippi.  The suit was removed to federal court on June 23, 2006 on the basis

of diversity jurisdiction.  In the complaint, plaintiff alleges that defendant Canadian National

1

Railway Company ("CNR") failed to properly inspect and maintain its railways and railway crossings - specifically, that it failed to give reasonable and timely audible or visible warnings of the approach of the train prior to the collision, that it failed to exercise reasonable care in operating the train prior to the collision, and that it failed to maintain a reasonably safe crossing - all of which contributed Arthur R. Sumrall's death. Plaintiff asserts causes of action against CNR (and against the other defendants) for negligence, malice and/or gross negligence, statutory survival, and statutory wrongful death.

CNR is a Canadian corporation with its principal place of business in Montreal, Quebec, Canada. CNR is not registered or licensed to do business in the State of Mississippi, has no agent for service of process in Mississippi and files no tax returns in the State of Mississippi. According to CNR, it has no employees residing in the State of Mississippi, does not operate as a railroad in the State of Mississippi, and owns no land or track in the State of Mississippi.[1]

CNR owns all the stock of Grand Trunk Corporation ("GTC"), a Delaware corporation. GTC is a holding company that does not operate as a railroad in any state and has no employees. GTC, in turn, owns all the stock of Illinois Central Corporation ("ICC"), a Delaware corporation. ICC also does not operate as a railroad in any state, nor does it have any employees. ICC is the sole shareholder of defendant Illinois Central Railroad Company ("ICRR"), the entity that, according to CNR, owns the locomotives involved in the accident at issue in this case and owns and maintains the track and right-of-way where the accident occurred. ICRR is incorporated in the State of Illinois, with its principal place of business in Illinois. According to CNR, ICRR

---

[1] Plaintiff disputes this contention and has offered several documents in support of its position that, in fact, CNR does business in Mississippi. These will be discussed below in the court's analysis of personal jurisdiction.

2

owns land, track and other facilities in the State of Mississippi, has employees in the State of Mississippi and files tax returns in Mississippi.

Plaintiff attempted to serve process upon CNR by serving its agent for process in the State of New York.  On July 5, 2006, CNR moved to dismiss on the grounds that it was not properly served with process, and that this court lacks personal jurisdiction under the Mississippi long-arm statute and the due process clause of the United States Constitution.

ANALYSIS

Service of Process

Rule 4(h) of the Federal Rules of Civil Procedure, which governs service upon both domestic and foreign corporations,[2] provides:  "Unless otherwise provided by federal law, service upon a domestic or foreign corporation...shall be effected: (1) in a judicial district of the United States in the manner prescribed for individuals by subdivision (e)(1),[3] *or* by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any

---

[2] Curiously, in its brief CNR cites Rule 4(f), which governs service upon individuals in foreign countries.  This provision is inapplicable to the instant case.

[3] Rule 4(e)(1) provides that service shall be effected pursuant to the law of the state in which the district court is located, or in which service is effected.  Rule 4(d)(4) of the Mississippi Rules of Civil Procedure provides that foreign corporations may be served by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.  Rule 311 of the New York Civil Practice Law and Rules provides that service may be made upon a foreign corporation by serving its officer, director, managing or general agent, or cashier or assistant cashier or any other agent authorized by appointment or by law to receive service.  Thus, under either of these rules, service upon CNR was proper.

1.

other agent authorized by appointment or by law to receive service of process..." (emphasis added).

As CNR's registered agent for service of process in New York was served with the summons and complaint, this satisfies Rule 4(h)(1) and therefore service of process was properly effected. Having determined this threshold issue, the court now turns to the question of whether it can exercise personal jurisdiction over CNR.

Personal Jurisdiction

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, plaintiff has the burden of establishing that the court has jurisdiction over the defendant. *Lofton v. Turbine Design, Inc.*, 100 F.Supp. 2d 404, 407 (N.D. Miss. 2000) (citation omitted). However, plaintiff need not make a full showing on the merits; plaintiff must merely make a *prima facie* showing of the facts upon which *in personam* jurisdiction is predicated to avoid dismissal for lack of jurisdiction. *Id.* at 408; *see also Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). In making this showing, the allegations of the complaint, except as controverted by defendant's affidavits, must be accepted as true, and all relevant factual disputes are resolved in favor of the plaintiff. *Lofton*, 100 F.Supp. 2d at 407 (citation omitted); *Thompson*, 755 F.2d at 1165; *Seiferth v. Helicopteros Atuneros, Inc.*, 2006 WL 3564657, at * 1 (5th Cir. Dec. 11, 2006) (citation omitted).

A federal court sitting in diversity may exercise *in personam* jurisdiction over a nonresident corporate defendant if:  1) the forum state's long-arm statute confers personal jurisdiction; and 2) exercise of personal jurisdiction comports with the Due Process Clause of the Constitution. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Mississippi's long-arm

statute, section 13-3-57 of the Mississippi Code Annotated, provides:

> Any...foreign or other corporation not qualified
> under the Constitution and laws of this state as to
> doing business herein, who shall make a contract
> with a resident of this state to be performed in whole
> or in part by any party in this state, or who shall
> commit a tort in whole or in part in this state against
> a resident or nonresident of this state, or who shall do
> any business or perform any character of work or
> service in this state, shall by such act or acts be deemed
> to be doing business in Mississippi and shall thereby
> be subjected to the jurisdiction of the courts of this state.

As CNR admits, plaintiff's allegations sound in tort.  Therefore, the court will analyze the

tort prong of the long-arm statute.  The Mississippi Supreme Court has held that personal

jurisdiction over a defendant who allegedly committed a tort is proper if any of the elements of

the tort - or any part of an element - takes place in Mississippi.  *Jobe v. ATR Marketing, Inc.*, 87

F.3d 751, 753 (5th Cir. 1996) (*citing Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971)).

And the Mississippi Supreme Court has also stated that "[t]he tort is not complete until injury

occurs, and if the injury occurs in this State, then, ...the tort is committed, at least in part, in this

State, and [in] personam jurisdiction of the nonresident tort feasor is conferred upon the

Mississippi court." *Smith*, 252 So. 2d at 216 (*quoted in Thompson*, 755 F.2d at 1168); *see also*

*Lofton*, 100 F.Supp. 2d at 409 (citations omitted) ("a tort is considered to have been committed in

part in Mississippi where the injury results in the state).

Plaintiff alleges that CNR's failure to properly inspect and maintain its railways and

railway crossings caused or contributed to Arthur R. Sumrall's death.  Plaintiff asserts causes of

action against CNR (and against the other defendants) for negligence, malice and/or gross

negligence, statutory survival, and statutory wrongful death.  The accident at issue in this case

occurred in Mississippi, and Arthur R. Sumrall's death occurred in Mississippi.   The court finds this is sufficient to make a *prima facie* showing of personal jurisdiction under the tort prong of Mississippi's long-arm statute.[4]   *See, e.g., Seiferth*, 2006 WL 3564657, at * 3 (holding that tort prong of Mississippi's long-arm statute permitted exercise of personal jurisdiction over nonresident defendant where injury (death) resulting from defendant's alleged negligence occurred in Mississippi); *Thompson*, 755 F.2d at 1168 (holding that court could exercise personal jurisdiction over nonresident manufacturer of automobile, pursuant to tort prong of Mississippi's long-arm statute, where accident at issue in negligence action occurred in Mississippi).

However, this does not resolve the issue.  The court must now determine whether subjecting CNR to *in personam* jurisdiction in Mississippi would comport with the Due Process Clause of the Fourteenth Amendment to the Constitution.  *Lofton*, 100 F.Supp. 2d at 409.   In order to so determine, the court must find: ) that CNR has purposefully established "minimum contacts" with Mississippi; and 2) that exercising personal jurisdiction over CNR would not offend "traditional notions of fair play and substantial justice."  *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) (citations omitted).

The court will first address the minimum contacts requirement.  A defendant has the requisite minimum contacts with a state when "it purposely avails itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  The minimum contacts "must come about

---

[4] Accordingly, the court need not - and thereby declines - to reach plaintiff's argument that this court has *in personam* jurisdiction over CNR pursuant to the "doing business" prong of the long-arm statute.  (Nor will the court address the contract prong of the long-arm statute, as neither party alleges that it is implicated and none of plaintiff's allegations against CNR sound in contract.)

by an action of the defendant purposefully directed toward" the forum state. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (citations omitted).  In order for this court to have personal jurisdiction over CNR, CNR's contacts with Mississippi must be such that it would "reasonably anticipate being haled into court" here.  *Worldwide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Under the minimum contacts analysis, personal jurisdiction can be either specific or general.  *Bryant v. Salvi*, 141 Fed. Appx. 279, 282 (5th Cir. July 12, 2005).  The focus here is on the nature of the underlying litigation.  *Lofton*, 100 F.Supp. 2d at 409.  The court may exercise specific jurisdiction over a nonresident defendant when the suit "arises out of or is related to" the defendant's contacts with the forum."  *Id.* (*citing Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1986)).  On the other hand, general jurisdiction involves a suit which does not arise from the nonresident defendant's contacts with the forum state and can be asserted only where the defendant has had "continuous and systematic contacts" with the forum state.  *Id.* (*citing Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 283 (5th Cir. 1988)).

Plaintiff has offered a number of documents in support of its contention that CNR does business in Mississippi within the meaning of the "doing business" prong of the long-arm statute. Although the court has declined to address that particular issue in light of its conclusion that the tort prong of the long-arm statute was satisfied, those documents will be used to analyze CNR's contacts with Mississippi for the purposes of the minimum contacts analysis.

First, plaintiff offers a Form 40-F, filed by CNR with the United States Securities and Exchange Commission ("SEC") for the fiscal year 2005.  In that document, it is stated that "[a]s of December 31, 2005, [CNR] operated approximately...6,300 route miles in sixteen U.S.

7

states...with principal routes...to the major U.S. rail hubs of Buffalo, Detroit, Duluth/Superior, Minneapolis/St. Paul, Chicago, St. Louis, *Jackson*, Memphis, New Orleans, Baton Rouge, and Mobile" (emphasis added).  The document also states: "[CNR] spans Canada and mid-America, serving all five major Canadian ports on the Atlantic and Pacific oceans and the Great lakes as well as New Orleans on the Gulf of Mexico" and that CNR "originated approximately 87% of traffic moving along its network in 2005."  The document further states that CNR has approximately 6,561 employees in the United States.  That document includes statements that CNR:  "interchanges traffic with Kansas City Southern Railroad at Jackson, Mississippi"; serves "large grain processors in ... Mississippi"; is a "leading carrier of automotive products originating in ... Mississippi"; and can access traffic from an automobile assembly plant in Mississippi."  Finally, in describing CNR's corporate organization, it is stated: "The Company's strategic initiatives, which drive its operational direction, are developed and managed centrally by corporate management and are communicated to its regional activity centers."

Plaintiff also offers CNR's Form 6-K, filed with the SEC in March 2006.  This document states: "The Company manages its rail operations as one business segment over a single network that spans vast geographic distances and territories, with operations in Canada and the United States...The Company's strategic initiatives, which drive its operational direction, are developed and managed centrally by corporate management and are communicated to its regional activity centers...".  In the Notes to Consolidated Financial Statements, it is stated: "[CNR], directly and through its subsidiaries, is engaged in the rail and related transportation business. [CNR] spans Canada and mid-America, from the Atlantic and Pacific oceans to the Gulf of Mexico, serving the...key cities of...Jackson, Mississippi, with connection to all points in North America."  In

President and CEO E. Hunter Harrison's message to CNR's shareholders, as set forth in the Form 6-K, Mr. Harrison discusses accidents in Flora, Mississippi and Alberta, Canada, that cost five CNR employees their lives (four died in Mississippi and one died in Alberta).  Mr. Harrison concluded his remarks by stating: "The loss of life we sustained in 2005 will remain with me for a long, long time."

        In addition to the documents filed with the SEC, plaintiff has also offered various other documents created by CNR.  In CNR's Investor Fact Book for 2005, it is stated that CNR is the "only rail network on the North American continent to connect three coasts - the Pacific, the Atlantic, and the Gulf of Mexico."  A map of CNR's rail systems in the Fact Book then shows CNR rail lines running through Mississippi from Memphis to New Orleans and from Jackson, Mississippi to Mobile, Alabama.  A "CN Average Traffic Density Map" is also found in the Fact Book, demonstrating the level of traffic on CNR's rail lines, including those running through Mississippi.  CNR's railroads in Mississippi are also pictured on additional maps throughout the Fact Book.  Other references are made throughout the Fact Book to CNR's activity in Mississippi:  CNR's "tricoastal network" is described, which includes ports on the Gulf of Mexico such as Gulfport, Mississippi;  Jackson, Mississippi is listed as one of CNR's "intermodal terminals" which allows CNR to deliver customers' shipments to destinations across North America; the document states that "[CNR's] domestic grain movements include corn and soybeans from [Illinois, Iowa, Michigan and Wisconsin] to large grain processors in...Mississippi"; several Mississippi customer locations are displayed for forest products along CNR's railroads; CNR is described as a "leading carrier of automotive products originating in... Mississippi" and the Nissan plant in Canton, Mississippi is mentioned in particular, along with a

map showing Canton's location along with other assembly and parts plants on CNR's rail lines; and several principal plant facilities for metals and minerals in Mississippi are displayed.

In addition, a news release dated July 19, 2006 states that CNR serves the "key city of Jackson, Mississippi, among others, with connections to all points in North America.  Identical language is used on numerous other news releases published during the last few years.  In a public stock information report for CNR dated August 14, 2006, it is stated in the summary: "[CNR], directly and through its subsidiaries, is engaged in the rail and related transportation business...[CNR] spans Canada and mid-America, from the Atlantic and Pacific oceans to the Gulf of Mexico, serving...the cit[y] of...Jackson, Mississippi, with connections to all points in North America."

Finally, plaintiff has offered a report published by the National Transportation Safety Board ("NTSB") dated following an investigation into the accident at Flora, Mississippi discussed above by Mr. Harrison.  The NTSB began its report by noting that CNR was an involved party and that the investigation into the accident focused on CNR's track maintenance. The safety issue examined by the NTSB was "[CNR's] continuous welded rail maintenance and inspection procedures and standards."  The report notes that several CNR employees participated in the 2004 maintenance history for the track at issue, including a CNR welder, a CNR track inspector, a CNR track foreman and a CNR track supervisor.  The NTSB's conclusion included findings that "[a]lthough [CNR] had written instructions for maintaining continuous welded rail and preventing track buckling, track employees at multiple levels did not follow or ensure adherence to these instructions."  CNR was therefore cited by the NTSB for its failure to comply with procedure and lack of rail anchors.

10

Based on the foregoing evidence, the court concludes that plaintiff has sufficiently demonstrated that CNR has "purposely avail[ed] itself to the privilege of conducting activities within" Mississippi. *Hanson*, 357 U.S. at 253.  CNR's own documents establish that it owns and operates (both directly and through subsidiaries) rail lines throughout the United States, including in Mississippi.[5]  This fact was repeatedly touted by CNR throughout the documents. CNR was also cited by the NTSB for an accident occurring in Mississippi resulting from its failure to maintain its tracks properly.  CNR could hardly argue that it could not "reasonably anticipate being haled into court" in Mississippi. *Worldwide Volkswagon*, 444 U.S. at 297.

The court further finds that plaintiff's claims arise out of or result from CNR's contacts with Mississippi.  The relevant contacts, as demonstrated by the documentary evidence discussed above, are CNR's ownership, operation and maintenance of rail lines in Mississippi.  Plaintiff's allegations against CNR - that it was negligent in its maintenance of its rail lines, thereby

---

[5] CNR disputes that it owns, operates or maintains the rail lines at issue in this lawsuit.  In the affidavit of Cynthia A. Bergmann, Corporate Counsel - U.S. for CNR and its U.S. subsidiaries, submitted in support of CNR's motion to dismiss, it is averred that "CNR does not operate as a railroad in the State of Mississippi, owns no land or track in the State of Mississippi, and has no employees in the State of Mississippi." Ms. Bergmann also avers that CNR's subsidiary and co-defendant ICRR, on the other hand, does.  However, as discussed earlier, plaintiff need only make a *prima facie* case of personal jurisdiction, and all relevant factual conflicts are resolved in plaintiff's favor. *Lofton*, 100 F.Supp. 2d at 407 (citation omitted); *Thompson*, 755 F.2d at 1165; *Seiferth*, 2006 WL 3564657, at * 1 (citation omitted).  The court also notes that CNR did not reply to plaintiff's opposition to its motion to dismiss and therefore did not attempt to explain or refute any of the evidence discussed above.  Accordingly, viewing the facts discussed above in plaintiff's favor, the court finds that plaintiff has sufficiently established that CNR has the requisite minimum contacts with Mississippi for this court to exercise *in personam* jurisdiction.  Moreover, the court notes that the fact that another party - namely, ICRR - might ultimately be responsible for the alleged negligence bears on the merits of the case and does not affect the jurisdictional analysis. *See, e.g., Seiferth*, 2006 WL 3564657, at * 7 ("A defendant with the required minimum contacts 'cannot avoid personal jurisdiction by speculating as to whether another party was actually responsible for the accident.'") (*citing Nuevo Pignone*, 310 F.3d at 380).

contributing to Arthur R. Sumrall's death - arise out of or result from these contacts.

Accordingly, the court can exercise specific personal jurisdiction over CNR.  The court further

finds that it also has general jurisdiction over CNR because, based on the foregoing evidence,

CNR has had "continuous and systematic contacts" with Mississippi.  *Interfirst Bank Clifton v.*

*Fernandez*, 844 F.2d 279, 283 (5th Cir. 1988) (*citing Helicopteros Nacionales de Columbia, S.A.*

*v. Hall*, 466 U.S. 408, 414 (1984)).

    Having found that the first prong of the jurisdictional test is met, the court will now

proceed to the second prong - whether exercising personal jurisdiction over CNR would offend

"traditional notions of fair play and substantial justice."  *Bullion* 895 F.2d at 216 (citations

omitted).  In this analysis, the burden of proof is on CNR to show that the exercise of personal

jurisdiction is "unfair or unreasonable" based on the following five factors: 1) the burden on

CNR; 2) the interests of Mississippi; 3) plaintiff's interest in obtaining relief; 4) the "interstate

judicial system's interest in the most efficient resolution of controversies"; and 5) "the shared

interests of the several states in furthering fundamental social policies."  *Seiferth*, 2006 WL

3564657, at * 7 (*citing Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 382 (5th Cir.

2002)).  The defendant must make a "compelling case" that the exercise of jurisdiction would be

unfair or unreasonable.  *Nuovo Pignone*, 310 F.3d at 382 (*citing Burger King*, 471 U.S. at 477).

    As for the first factor, CNR has not provided the court with any reason why defending

this lawsuit in Mississippi would be burdensome.  Additionally, the court notes that as set forth

in the documents provided by plaintiff discussed above, CNR engages in substantial business in

the United States and several thousand employees in the United States.  *See*, *e.g.*, *Nuovo*

*Pignone*, 310 F.3d at 382 (rejecting foreign defendant's burden argument where it presented

itself as a specialist in "worldwide transport and logistics" that maintained offices in the United States); *Access Telecom, Inc. v. MCI Telecomm., Corp.*, 197 F.3d 694, 716 (5th Cir. 1999), *reh'g en banc denied*, 210 F.3d 365 (5th Cir. 2000) (rejecting foreign company's claim that subjecting it to suit in the United States would be burdensome where the company had engaged in "numerous business dealings in the United States").  Moreover, the second, third and fourth factors also militate in favor of this court exercising jurisdiction over CNR.  Mississippi certainly as a substantial interest in this case, as decedent Arthur R. Sumrall was a resident of this state and the accident occurred in this state, plaintiff certainly has an interest in obtaining relief from CNR, and the most efficient resolution of this controversy would be to litigate plaintiff's claims in one forum and in one proceeding, rather than piecemeal.  With respect to the final factor, the court can find no reason (nor has CNR provided one) why this factor would apply in this case.

IT IS, THEREFORE, ORDERED AND ADJUDGED that CNR's motion to dismiss [**# 4**] is DENIED.

SO ORDERED and ADJUDGED on this, the 23rd day of January, 2007.


s/ *Keith Starrett*
UNITED STATES DISTRICT JUDGE

13